**UNITED STATES of America**

v.

**Bobby J. LEONARD, Appellant.**

**No. 73–1769.**

United States Court of Appeals,
District of Columbia Circuit.

June 6, 1974.

Joseph Paull, Washington, D. C. (appointed by this court) was on the brief for appellant.

Earl J. Silbert, U. S. Atty., with whom John A. Terry, John H. Bayly, Jr. and Julius A. Johnson, Asst. U. S. Attys., were on the brief for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and JAMESON,* United States Senior District Judge for the District of Montana.

MacKINNON, Circuit Judge:

On March 12, 1970, appellant Leonard was adjudged guilty by the United States District Court for the District of Columbia of first degree burglary,[1] grand larceny [2] and forgery and uttering [3] and

> committed to the *custody* of the Attorney General or his authorized representative for imprisonment for a period of
>
> Five (5) years to fifteen (15) years on Count 1 [4]; Ten (10) years to thirty (30) years on Count 3 [5]; Three (3) years to nine (9) years on each of Counts 2 and 4 [6]; and Two (2) years to six (6) years on each of Counts 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14,[7] said sentences, by the Counts, to run concurrently and concurrently with the sentence now being served.

The written "Judgment and Commitment" signed by the court "Ordered . . . that [a] copy serve as the commitment of the defendant." (Government Exhibit 1.) Pursuant to the aforesaid Judgment appellant was committed to serve his sentence at Lorton Reformatory which is located in the Commonwealth of Virginia within commuting distance of the District of Columbia.

While appellant was confined at Lorton he became a member in that institution of a group of 20 inmate-entertainers which called themselves the "Apostles of Soul." Appellant acted as a master of ceremonies and the group was permitted on occasion to make *escorted* tours outside the prison to provide musical entertainment for various local

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. D.C.Code § 22–1801(a).

2. *Id.* § 22–2201.

3. *Id.* § 22–1401.

4. First degree burglary.

5. *Id.*

6. Grand larceny.

7. Forgery and uttering.

groups pursuant to prior arrangements. Such trips were made in a bus with barred windows and other security features and the guards who escorted the group consisted of Department of Corrections personnel. All the surrounding circumstances supported the obvious conclusion that such trips were not intended as journeys to freedom. Prior to November 20, 1971, appellant had made at least one trip outside the reformatory and returned with the group to the reformatory after their performance was concluded.

On November 20, 1971, this "Apostles of Soul" group was scheduled for an evening performance in the District of Columbia. This trip was similar to the one appellant had participated in earlier. Before it left the group was given written and oral instructions concerning conduct and procedures for such trips (Tr. 20–23) and was instructed to remain in the immediate area of the performance and to return to the bus for the trip back to Lorton (Tr. 20). After leaving the reformatory the group was taken in the custody of the guards from the Department of Corrections, first to attend a beauty pageant at Terrell High School in Northwest Washington and thereafter the group was taken about three blocks away to furnish musical entertainment at a youth center banquet.

Appellant was last seen at the school. After the banquet a search for appellant was conducted and the departure of the bus was delayed for about an hour but appellant never appeared nor could he be found. About six months later, on May 18, 1972, an FBI agent arrested appellant on a warrant at an apartment in Brooklyn, New York. He was then working in that area. For such conduct he was indicted under the Federal Escape Statute, 18 U.S.C. § 751.[8] The indictment provides:

On or about November 20, 1971, within the District of Columbia, BOBBY J. LEONARD, having been lawfully committed to the custody of the Attorney General on March 12, 1970, by virtue of a conviction and sentence imposed by the United States District Court for the District of Columbia in Criminal Case Number 899–69, did unlawfully and feloniously flee and escape from such custody.

Appellant waived a jury trial and was convicted by judgment of the court pursuant to a general finding of guilt and, on request of appellant, to special findings of facts.[9] On June 18, 1973 he was sentenced to imprisonment for a period of

THREE (3) YEARS consecutive with any sentence now being served; pursuant however to the provisions of Title 18, UNITED STATES CODE SECTION 4208(a)(2).[10]

Appellant now contends that he did not escape from "custody" as that term is

---

8. 18 U.S.C. § 751 provides:
(a) Whoever escapes . . . from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner . . . shall, if the custody or confinement is by virtue of . . . conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . .

9. Fed.R.Crim.P. 23(c) provides:
*Trial Without a Jury.* In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.
As amended Feb. 28, 1966, eff. July 1, 1966.

10. At sentencing the court explained the application of 18 U.S.C. § 4208(a)(2) to his sentence as follows:
The sentence I am about to give is one which will not add to your minimum time. That is the important thing. It will, however, be consecutive to the total time which would give you some incentive to continue to cooperate with the authorities.
\* \* \* \* \*
(a)2 of 4208 means that the Parole Board could release you tomorrow if this were your only sentence, but they would only release you when they are satisfied

used in the escape statute, 18 U.S.C. § 751(a). We disagree.

"Stone walls do not a prison make" and "custody" in the escape statute is not restricted in its meaning to escape from immediate confinement within prison walls. Even at common law two kinds of escape were recognized:

1. Without any act of force, and this is a simple escape.

2. With an act of force, viz., by breach of prison.

1 Hale's P.C. 590. The English law also held it to be a criminal escape if a person arrested on criminal process escaped from the arresting officer "before he is put in hold." II Blackstone 1306 (4th ed. 1899). What is charged here is a simple escape where the prisoner eludes the vigilance of the guards charged with his custody. Appellant and the "Soul"

group were escorted by guards, conveyed in the prison-type bus and were required to return by instructions and regulations which were sufficient to satisfy the "custody" requirement. See United States v. Rudinsky, 439 F.2d 1074, 1076–1077 (6th Cir. 1971)[11]; United States v. Hollen, 393 F.2d 479 (4th Cir. 1968)[12] McCullough v. United States, 369 F.2d 548 (8th Cir. 1966)[13]; Read v. United States, 361 F.2d 830 (10th Cir. 1966)[14]; Nace v. United States, 334 F.2d 235, 236 (8th Cir. 1964)[15]; Tucker v. United States, 251 F.2d 794 (9th Cir. 1958)[16]; Giles v. United States, 157 F.2d 588 (9th Cir. 1946), cert. denied, 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832 (1947)[17]; cf. People v. Owens, 236 Cal.App.2d 403, 46 Cal.Rptr. 91, 92, (1965)[18]; People v. Smith, 195 Cal. App.2d 789, 790, 16 Cal.Rptr. 111 (1961).[19] The facts here more than sat-

that is in the best interest of the community and yourself. . . .
Sentencing Tr. at 7.

11. In *Rudinsky*, the prisoner was permitted to leave a treatment center between 6 A.M. and 6 P.M. for the purpose of holding regular employment and eating his meals. He eventually failed to return and was apprehended three months later. Held, he was in "custody" within the meaning of the escape statute, 18 U.S.C. § 751(a), even though he was not under constant supervision of guards since there was some restraint upon his complete freedom by virtue of the restrictions imposed by the treatment center which deprived the prisoner of his freedom of movement and association.

12. In *Hollen*, a prisoner participating in a work release program was guilty of escape in violation of 18 U.S.C. §§ 751, 4082 when he failed to return to the reformatory at the end of the work day and instead went to Washington, D. C., where he was captured twenty days later.

13. In *McCullough*, a prisoner assigned to a pre-release guidance center who signed out and failed to return at a designated time was guilty of an escape from "custody" even though the center had not been formally designated as a qualified place of confinement. The prisoners had been instructed to return at a designated time.

14. In *Read*, reformatory prisoners who were escorted by unarmed reformatory employees to a cafeteria in another city to participate

in a speech contest and who were told not to leave the building were held to be in "custody" within the meaning of the escape statute, 18 U.S.C. § 751(a), when they fled through an unguarded door near rest rooms that they were permitted to visit without the immediate accompaniment of the accompanying guards.

15. In *Nace*, one sentenced to imprisonment was guilty of escape when, following a temporary release from a pre-release guidance center in order to permit him to work on a job, he absconded and failed to return when ordered.

16. In *Tucker*, a prisoner from Alcatraz was transported to Los Angeles pursuant to a habeas corpus ad testificandum. In Los Angeles he escaped while he was being wheeled outside the jail ward at a hospital to get medical attention. He was handcuffed on a stretcher and accompanied by a hospital orderly.

17. In *Giles*, the prisoner was on the island outside Alcatraz prison and was a member of a working party under the supervision of prison guards.

18. Owens escaped from a prison camp where he was fighting forest fires under the supervision of a forestry supervisor. Held, that he was under constructive custody of the Department of Corrections.

19. The facts in *Smith* are essentially the same as in note 18, *supra*, except that Smith was merely instructed to work with a forestry crew.

isfy the "custody" requirement, especially in view of a specific statute, applicable to § 751(a) offenses, which provides:

(d) The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title.[20]

This is codified as 18 U.S.C. § 4082(d), P.L. 89–176, Sept. 10, 1965, 79 Stat. 675.

In United States v. Vaughan, 144 U.S. App.D.C. 316, 446 F.2d 1317 (1971), we pointed out that the foregoing provision was enacted in order to cover those escapes from outside prison walls which United States v. Person, 223 F.Supp. 982 (S.D.Cal.1963) held not to be within the escape statute. In *Person* a prisoner's failure to return to a "half-way house" after having been given a five-hour night pass permitting him to make an unescorted trip to Los Angeles was held not to be an escape from "custody" within the meaning of 18 U.S.C. § 751. We held in *Vaughan* that § 4082(d) controlled and that therefore the failure of an accused, while awaiting trial for robbery, to return to jail while participating in a work release program (*unescorted*) under the Bail Reform Act [21] was an escape from custody under 18 U.S.C.A § 751(a). Since § 4082(d) makes a mere wilful failure to return to the institution within the time prescribed an "escape," even though no guard is escorting the prisoner as in *Vaughan,* then a fortiori the action of appellant Leonard in wilfully failing to remain within the extended limits of his confinement during the escorted trip under the circumstances herein set forth is clearly an

escape from custody and a violation of § 751(a), particularly as enlarged by § 4082(d). The testimony and the court's findings support the conclusion that Leonard was sufficiently informed of the extended limits of his confinement.[22] Appellant did not testify at the trial and to suggest on the bare facts of this case that a prisoner serving a sentence in the custody of the Attorney General as long as 10 to 30 years would have grounds to believe that he had satisfied such sentence within the short period he had been confined at Lorton, is to suggest the ridiculous. Moreover, the manner of his escape and the length of his absence are inconsistent with his claim that he did not act wilfully. We thus affirm the conviction.

Judgment accordingly.

---

20. Chapter 35 of this title is Title 18 U.S. Code, entitled "Escape and Rescue", and includes §§ 751 to 757, inclusive. Subparagraph (d) quoted above appears in the Code as 18 U.S.C. § 4082(d). The appellant makes no reference to this statute nor to our decision in United States v. Vaughan, 144 U.S.App.D.C. 316, 446 F.2d 1317 (1971).

21. 18 U.S.C. § 3146(a)(5).

22. Appellant was instructed on "not leaving the area . . . to load properly at time of departure and stay in the immediate area . . ." and was never given permission to leave the banquet or pageant area or to leave and not return to the bus (Tr. 20–21). The trial court made findings based on this testimony (Judge's Findings, p. 2).