UNITED STATES of America,
Plaintiff-Appellee,

v.

Barton Hans PETERSON,
Defendant-Appellant.

No. 78–1433.

United States Court of Appeals,
Ninth Circuit.

Jan. 26, 1979.

Rehearing Denied March 21, 1979.

Herbert Hoffman, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

James M. McCabe (argued), San Diego, Cal., for defendant-appellant.

Before CHAMBERS and ANDERSON, Circuit Judges, and CALLISTER,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Defendant was convicted of escape, 18 U.S.C. § 751(a), after a court trial on stipulated facts. The appeal is timely and we have jurisdiction under 28 U.S.C. 1291 and 1294. The government states the issue as follows: whether defendant's failure to report to the United States Marshal, after having been ordered by the court, in open court, to commence his custody *immediately* pursuant to a valid conviction and sentencing, constituted the crime of escape within the meaning of Title 18, United States Code, Section 751(a).[1] More simply stated, was the defendant in custody? We agree with the district court that defendant was in custody and AFFIRM.

I. THE FACTS:

Defendant's asserted escape stems from his plea of guilty to one firearms count of a multiple count indictment. On October 20, 1975, defendant appeared for sentencing

---

* The Honorable Marion J. Callister, United States District Judge for the District of Idaho, sitting by designation.

1. Section 751(a), in material part, provides: "Whoever escapes or attempts to escape . . . from *any custody* under or *by virtue of any process issued under the laws of the* *United States by any court, judge, or magistrate* . . . shall . . . be fined not more than $5,000 or imprisoned not more than five years, or both . . . ." Title 18, United States Code, Section 751(a) (emphasis added).

with counsel. Sentence was imposed. Defendant requested a stay of execution of the sentence. The following colloquy ensued:

"THE COURT: That motion will be denied. He will commence his sentence *now*. You take him down to the Marshal's Office *now*, Mr. Crobarger. I don't see a Marshal in the courtroom. You take the defendant down to the Marshal's office on the second floor. [emphasis added]

"MR. CROBARGER: I will, your Honor. Should I wait for a piece of paper from the Clerk?

"THE COURT: You take him down there *now*. [emphasis added]

"MR. PETERSON: May the remaining counts be dismissed and the bond exonerated?

"THE COURT: Remaining counts dismissed."

A short time later defendant's counsel returned to the courtroom and advised the district judge that the defendant, before he and his counsel reached the Marshal's office, had slipped away. This exchange then took place:

"THE COURT: Just a moment. Mr. Clerk, would you issue a Bench Warrant for one Barton Hans Peterson.

Mr. Crobarger, I gave—extended the defendant the courtesy of being taken down to the Marshal's Office instead of putting handcuffs on him and taking him down. Apparently, he didn't appreciate that. He's long gone.

Is that a fair statement?

"MR. CROBARGER: Well, I've run around the building a whole bunch of times, up and down stairs, I can't find him. I've talked with the Marshal's Office and told them and the others, you know, where he lives, et cetera.

"THE COURT: Mr. Peterson [Assistant United States Attorney], I don't know whether this is escape, or what we can do on it, but check it out. I extended every courtesy to that young man, and that's what you get when you try to be decent.

"MR. CROBARGER: Well, I stepped outside the door and Mr. Hendricks was standing there, we had a case set for trial tomorrow, and I stopped to say a couple of words to him and turned around and I couldn't find my client. I'm sorry.

"THE COURT: Bail forfeiture. And, Mr. Peterson, take the necessary action.

"MR. PETERSON: Thank you, your Honor.

"THE COURT: And I won't be so decent to him next time, like about three years instead of 90 days, Mr. Crobarger, if the case warrants it. I'm not ruling on it at this time, but we'll give him a fair trial.

"MR. CROBARGER: The Marshal's Office said they will not hire me since I failed my first assignment.

"THE COURT: Very well."

The defendant never voluntarily surrendered to the United States Marshal. Almost two years later, September 6, 1977, defendant was arrested by the FBI at Chula Vista, California, where he was living under an assumed name. On October 7, 1977, a single count indictment was returned charging defendant with escape from custody under 18 U.S.C. § 751(a).[2] Following the bench trial, defendant was found guilty and was sentenced on the escape charge on January 16, 1978.

## II. THE COURT'S ORAL ORDER OF COMMITMENT:

█ Defendant asserts that custody would not attach within the meaning of the

---

2. The escape indictment charges:
"The Grand Jury charges:
COUNT ONE
On or about the 20th day of October, 1975, in the Southern District of California, BARTON HANS PETERSON, aka William Fowler, having been lawfully ordered to custody of the Attorney General by the Honorable Howard B. Turrentine, United States District Judge, pursuant to process issued under the laws of the United States, to wit: oral pronouncement of sentence in Case No. 75–1443, did unlawfully and wilfully escape from such custody; in violation of Title 18, United States Code, Section 751(a)."

escape statute until he arrived at the marshal's office and surrendered. Counsel for defendant candidly concedes that custody need not be physical but that it can result from the willful failure to comply with a lawful order *to* custody orally given. On principle and fact we cannot perceive a significant distinction between defendant's circumstances and those in *Tennant v. United States*, 407 F.2d 52 (9th Cir. 1969). Tennant was placed in custody by the oral pronouncement of the fact that he was under arrest. A customs inspector lawfully issued the order. Tennant then sped away in his automobile. We held:

> "If appellant heard and understood the oral communication that he was 'under arrest,' the authorized detention became 'custody' within the meaning of the statute in question." 407 F.2d at 53.

Tennant was held to be under lawful arrest and in custody even though there was no confinement.

Here, no assertion is made that defendant did not hear and understand the oral imposition of sentence, concededly lawful. Nor that he did not hear and understand the denial of his motion for a stay of execution and that it was the order of the court that the sentence begin "*now*," immediately. A person of ordinary intelligence and understanding would know that he was not free to leave; that he was in "custody under or by virtue of *any* process issued under the laws of the United States by [a] court, [or] judge," (§ 751(a)) and that his then attorney, an officer of the court, was immediately the court's custodian for the purpose of transferring that custody to the Marshal. The defendant's conduct belies any misunderstanding on his part that he was not in custody under the court's "process." *United States v. Leonard*, 162 U.S.App.D.C. 212, 498 F.2d 754, 757 (1974). Although arising in a different context, *Vincent v. United States*, 337 F.2d 891, 894 (8th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965), recognizes that a defendant is in the court's custody immediately after sentence but before being transferred to the Marshal's custody. We think it patent that a defendant fleeing from the courtroom immediately after sentencing, in the circumstances here, would constitute an escape from custody. That defendant fled from the custody of an officer of the court after lawfully leaving the courtroom cannot alter this conclusion. *Cf. People v. Handley*, 11 Cal.App.3d 277, 89 Cal.Rptr. 656 (1970), interpreting and applying a state escape statute on very similar facts.

### III. THE INDICTMENT

The defendant did not raise the issue of the sufficiency of the indictment either here or below. We may and should consider the issue *sua sponte* if the indictment fails to state an offense under federal statutes. Judge Chambers properly raises the issue but we respectfully disagree with his analysis. We are satisfied that the indictment, although not a model of clarity, does state a federal offense under 751(a).

When properly read and construed in its entirety, the indictment does not charge an escape from the custody of the Attorney General. Fairly read, the indictment charges an escape from the lawful custody of the district court pursuant to an oral process of the court ordering the defendant *to* the custody of the Attorney General. We believe this to be a fair and common sense reading and so understood by defendant and his counsel. As Professor Wright observes, "Common sense will be a better guide than arbitrary and artificial rules, and the sufficiency of the indictment will be determined on the basis of practical rather than technical considerations." 1 Wright, Fed.Prac. & Proc., Sec. 125, p. 249. *Williamson v. United States*, 310 F.2d 192, 196 (9th Cir. 1962) (dictating a practical inquiry). Furthermore, it is not required that an indictment "under § 751(a) must state the specifics of the process under which the defendant is held in federal custody." *United States v. McCray*, 468 F.2d 446, 448 (10th Cir. 1972).

The indictment in this case correctly and clearly alleges the time, place and method or manner of the violation. It advises the defendant of what he needs to know to

prepare his defense, and when taken with the stipulated facts, more than adequately protects him from double jeopardy. Any ambiguity that may be said to exist is without substance and no right of the defendant has been prejudiced. *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The indictment complies with Rule 7(c)(1), F.R.Cr.Proc.

Finally, when indictments are tardily challenged, we liberally construe them in favor of validity. *Kaneshiro v. United States*, 445 F.2d 1266, 1269 (9th Cir.), *cert. denied*, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971); *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Caldwell*, 544 F.2d 691, 695 (4th Cir. 1976).

## IV. CONCLUSION

We believe that the Congress, in its 1965 amendments, intended the words "any custody" to have a broad and expansive meaning and application. *United States v. Vaughn*, 144 U.S.App.D.C. 316, 446 F.2d 1317 (1971), 18 U.S.C. 4082(d); H.R.Rep.No. 1014, 88th Cong. 1st Sess. 1 (1963), U.S.Code Cong. & Admin.News 1963, p. 1381. Defendant was in custody within the meaning of 18 U.S.C. § 751(a). The indictment is sufficient. We believe common sense and practicality dictate this result.

The conviction is AFFIRMED.

CHAMBERS, Circuit Judge, dissenting:

The indictment charges that Peterson had been ordered to the custody of the attorney general and that "he did unlawfully and wilfully escape from such custody." Peterson's motion for judgment of acquittal (Rule 29, F.R.Cr.P.) should have been granted. The government did not prove escape from "such" custody.

The court had custody and the defendant may have unlawfully fled from that custody. But this is not what the government charged in the indictment. We cannot ignore the fact of the court's custody for the convenience of saying that there was some sort of constructive attorney general pre-custody.

I would reverse.