852 P.2d 1236

**STATE of Arizona, Appellee,**

v.

**Marcos Anthony SANCHEZ, Appellant.**

**No. 1 CA–CR 91–0254.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 27, 1992.

Review Denied June 15, 1993.*

* Moeller, V.C.J., of the Supreme Court, voted to

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div. and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender, by Stephanie L. Swanson, Deputy Public Defender, Phoenix, for appellant.

OPINION

GARBARINO, Judge.

After having been charged with driving under the influence, the defendant missed his court appearance. He later went to court and submitted himself to the judge to try to explain his failure to appear. The court proceeded with an arraignment. During the course of the arraignment, the court advised the defendant that he was in custody and that he should be seated. The judge further informed the defendant that he would have to post bond before he could leave. Upon request by the defendant, the judge explained to him why he had been placed in custody. The defendant admits that he knew he was not free to leave the courtroom. He then ignored the court order placing him in custody and walked out of the courtroom. The defendant was later taken into custody and charged with escape in the third degree, a class 6 undesignated felony. He entered a plea of guilty to the

grant review.

charge and was sentenced to three years probation with ninety days in jail.

## ISSUE

The only issue on appeal is whether there was a factual basis for the defendant's plea of guilty to the crime of escape. It is the defendant's position that although he heard the judge's order placing him in custody and he knew that he was not free to leave the courtroom, there was no arrest because he was never physically restrained. We disagree and affirm.

We hold that a defendant who leaves the courtroom in defiance of the judge's order not to leave, knowing that the judge has placed him in custody, commits the crime of escape.

## DISCUSSION

■ The defendant contends that the factual basis for escape in the third degree was insufficient, that his plea should be vacated and that the matter should be remanded to the trial court. He argues that although he knew he was not free to leave, the judge never told him he was under arrest. He further argues that he was never physically restrained. Based on a lack of physical restraint, the defendant concludes that he was never under arrest and therefore could not be guilty of escape.

"Custody" is defined by A.R.S. section 13–2501 as follows:

3. "Custody" means the imposition of actual or *constructive restraint pursuant to* an on-site arrest or *court order* but does not include detention in a correctional facility, juvenile detention center or state hospital. [Emphasis supplied.]

Arizona Revised Statutes Annotated section 13–2502 reads as follows:

A. A person commits escape in the third degree if, having been arrested for, charged with or found guilty of a misdemeanor or petty offense, such person knowingly escapes or attempts to escape from custody.

B. Escape in the third degree is a class 6 felony.

It must first be remembered that the defendant submitted to the authority of the court when he went to court to see the judge. Implicit in his return was the need to explain his absence to the court.

■ Since the legislature provided two types of custody, actual and constructive, it is readily apparent that it intended to draw a distinction between physical restraint and nonphysical restraint. The facts of this case clearly establish that the judge placed the defendant in custody and under arrest by use of "constructive restraint." Although we can find no Arizona cases defining constructive restraint, the clear intent of the language of the statute is that the "court order" did not require physical restraint of an individual. Rather, the word "order" denotes a communication to that individual that he is in custody and not free to leave. We find support for our conclusion in *United States v. Peterson,* 592 F.2d 1035 (9th Cir.1979), where the defendant, after sentencing, disobeyed the court's order to turn himself in to the marshal's office and slipped away. He was later correctly charged with escape from custody. 592 F.2d at 1037.

The defendant asserts that this case is governed by *State v. Sanchez,* 145 Ariz. 313, 701 P.2d 571 (1985). We disagree. The facts of that case are distinguishable from the instant case. In *Sanchez,* the defendant ran away after being told by a law enforcement officer that he was under arrest. 145 Ariz. at 314, 701 P.2d at 572. The supreme court held that a person must be under arrest before he or she can be charged with escape and that an arrest can only be accomplished by an actual restraint of the person by the *officer* making the arrest. 145 Ariz. at 316, 701 P.2d at 574. The court goes on to discuss "constructive restraint" but does so only in the context of a law enforcement officer. Here, we are not confronted with an attempted arrest by a law enforcement officer. In this case we are dealing with the lawful order of a judge made in open court. We find that *Sanchez* is not applicable to this case.

The defendant is not arguing that he did not hear or understand the judge. He is saying that the judge must physically restrain him when placing him under arrest for the order to have effect. There is no contention by the state that the defendant

was ever under actual restraint. In our opinion, the provisions of A.R.S. sections 13–2501 and 13–2502 are clear. "Constructive restraint" for purpose of arrest can be achieved by court order made in open court when a defendant who has submitted to the authority of the court understands that the judge has ordered him into custody and that he is not free to leave. Should the defendant elect to leave in defiance of the judge's order, he can properly be charged with escape.

We affirm the judgment of the trial court.

JACOBSON, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. I believe this case is governed by the opinion of our supreme court in *State v. Sanchez*, 145 Ariz. 313, 701 P.2d 571 (1985). In that case, a police officer who had been told that there was an outstanding arrest warrant for a man named Roy Sanchez, followed a car in which Sanchez was riding to a drive-in restaurant. There, Sanchez left the car and went to talk to some people in another vehicle. When it appeared that Sanchez might leave in the other vehicle, the officer said, "Roy, come here. I need to talk to you." Sanchez retreated from the officer, and the two were ten to fifteen feet apart when the officer said, "This is it, Roy; you're under arrest." At this point, Sanchez "took off running" with the officer in vain pursuit.

Sanchez was later arrested, charged with escape, and convicted following a trial. The court noted that under Arizona Revised Statutes Annotated ("A.R.S.") § 13–2502(A), the same statute under which the defendant in the case now before us was charged,

A person commits escape in the third degree if, having been arrested for, charged with or found guilty of a misdemeanor or petty offense, such person knowingly escapes or attempts to escape from custody.

According to A.R.S. § 13–2501(3):

"Custody" means the imposition of actual or constructive restraint pursuant to an on site arrest or court order....

There was no question that Sanchez was never under actual restraint, so the case turned on whether he was ever under "constructive restraint," or, as the supreme court phrased it:

[w]hether a person can be in custody, and thereafter commit escape, without ever having been technically arrested—without having been under actual restraint of the officer *or having submitted to the officer's authority.*

145 Ariz. at 315, 701 P.2d at 573 (emphasis added).

The court went on to observe that the legislative history of the escape statute suggested that it was not the intent of the legislature to treat nonviolent flight from arrest as a felony escape. It concluded that a person must be under arrest—under actual restraint *or have submitted to the officer's authority*—before he can commit escape. It said:

We read "constructive restraint" to mean those situations where the arrest has already occurred, the process of taking the arrestee to police station or judge commenced, and the suspect flees. In this context, the suspect is under no actual restraint, but, for the purposes of the escape statute, should be considered under "constructive restraint."

145 Ariz. at 316, 701 P.2d at 574.

The majority's conclusion that the judge's order created a constructive restraint makes the action of the person effecting the arrest the touchstone of constructive restraint. Under the rationale of *Sanchez*, however, the existence of constructive restraint depends in part on the conduct of the person being arrested. *Cf. United States v. Beck,* 598 F.2d 497, 500 (9th Cir.1979) (officer's intent is not dispositive of the issue of whether an arrest has been made).

The majority distinguishes *Sanchez* on the basis that in that case it was a police officer and not a judge who tried to arrest the defendant, but it does not articulate a rationale for the distinction it draws. I agree with the *Sanchez* court's observation that the legislature did not intend to punish a nonviolent flight from arrest as an escape. I think that is true whether it is a judge or a police officer who attempts to

make the arrest. The statute itself certainly does not make the distinction the majority draws.

I have considered whether the fact that the defendant appeared in court voluntarily might be sufficient submission to the authority of the judge to constitute constructive restraint. In my opinion, it is not, because when the defendant went to court, he did not know that he was going to be detained.

To conclude that the statute applies to the defendant's conduct calls into question whether the law is unconstitutionally vague. *See generally State v. Limpus,* 128 Ariz. 371, 375–76, 625 P.2d 960, 964–65 (App.1981) (statute must give persons of ordinary intelligence fair notice that contemplated conduct is forbidden). To conclude that the statute applies to the defendant's conduct also ignores the rule that doubts about the interpretation of a criminal statute must be resolved in favor of the defendant. *State v. Pena,* 140 Ariz. 545, 549–50, 683 P.2d 744, 748–49 (App.1983).

Finally, my conclusion is bolstered by the fact that judges have other adequate tools to deal with the situation this case presents. The refusal to obey a lawful order of the court is a class 1 misdemeanor. *See* A.R.S. § 13–2810(A)(2). Such refusal is also punishable as a contempt of court. *See* Ariz.R.Crim.P. 33.1.

The majority finds support for its position in *United States v. Peterson,* 592 F.2d 1035 (9th Cir.1979). In that case, the judge had sentenced the defendant to prison and told him to go directly to the marshall's office to surrender himself. Instead of doing as he had been ordered, the defendant left the courtroom and kept going. He was apprehended two years later, and charged with escape from custody, a violation of 18 U.S.C.A. § 751(a). That statute punishes an escape "from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate ..." Unlike the Arizona statute, the federal code contains no specific definition of "custody." The defendant was convicted following a trial to the court on stipulated facts. The court of appeals

affirmed, reasoning that the defendant was in the court's custody immediately after he was sentenced. In so holding it relied on its earlier decision in *Tennant v. United States,* 407 F.2d 52 (9th Cir.1969). In *Tennant,* after a customs officer told the defendant he was under arrest, the defendant sped away in his automobile. The court said:

> If appellant heard and understood the oral communication that he was "under arrest," the authorized detention became "custody" within the meaning of the statute in question.

at 53.

The fact that in *Peterson* the Ninth Circuit Court of Appeals relied on *Tennant* is particularly significant because the facts in *Tennant* and the facts on which our supreme court decided *Sanchez* are identical. Our supreme court, construing the Arizona statute, however, reached a result that was exactly the opposite of the decision in *Tennant.*

I would vacate the judgment of conviction and sentence imposed.