**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles David KELLER, Defendant–Appellant.**

**No. 89–30001.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1990.

Decided Aug. 24, 1990.

Charles W. Stuckery, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Stephen R. Sady, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Before WRIGHT, TANG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Charles D. Keller appeals his conviction for escape, in violation of 18 U.S.C. §§ 751(a) and 4082(a).[1] He contends that

---

1. The indictment alleged a violation of 18 U.S.C. § 4082(d). That subsection has since been redesignated as § 4082(a). Pub.L. 98–473, § 218(a) (1984). We use the current designation here.

his failure to report to begin his sentence was not an escape from "custody," as required by section 751(a). We disagree, and affirm his conviction.

## FACTS

Keller was serving a term of probation as a result of his conviction of a misdemeanor tax offense. He violated the terms of his probation, and the district court revoked the probation and imposed a sentence of imprisonment, but gave Keller a little over two weeks to wind up his affairs before reporting to his place of confinement. The district court's minute entry for July 23, 1987, when probation was revoked, reads as follows:

> ORDERED: *Count 4*—PROBATION REVOKED—sentenced to one (1) year in jail—first 120 days in a jail type institution—balance on probation. Jail sentence not to commence until August 10, 1987.
>
> Deft to report by the close of business to Clackamas Residential Center.

On August 3, 1987, the district court entered its judgment, which stated:

> IT IS ADJUDGED on Count 4, the defendant is committed to the Attorney General for imprisonment for a period of one (1) year; and on condition the defendant be confined in a jail type institution, specifically the Clackamas County Residential Center, for a period of 120 days, the execution of the remainder of the sentence of imprisonment is suspended and the defendant placed on probation for the balance of the one year imposed.
>
> \* \* \* \* \* \*
>
> IT IS ORDERED the defendant report to the Clackamas County Residential Center on or before 4:00 p.m., August 10, 1987.

Keller failed to report to the Center on the appointed date, and was later apprehended. He was indicted for escape, in violation of 18 U.S.C. §§ 751(a) and 4082(d),

and was tried, convicted, and sentenced to three years imprisonment. This appeal followed.

## ANALYSIS

### Escape from custody

Keller's primary contention is that he was never in custody, and consequently cannot have escaped from custody within the meaning of section 751(a). That section provides for the punishment of anyone who:

> ... escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest....

Keller's argument, most simply put, is that this statute clearly contemplates an escape *from* custody, and that it is not possible to escape from custody if one was never in custody. Keller concedes, as he must, that custody need not involve direct physical restraint.[2] *See, e.g., United States v. Jones*, 569 F.2d 499, 500 (9th Cir.), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 407 (1978) (escape when prisoner fails to return to half-way house after a weekend pass). Keller contends, however, that he was never placed in any kind of custody, however relaxed. The district court's sentence, in Keller's view, did not put him in custody because it clearly specified that he was not to begin serving his sentence until August 10, 1987. And since he never showed up at the Residential Center on that date, he never began his custody there.

---

**2.** The second statute under which Keller was indicted, 18 U.S.C. § 4082(a), provides:

> The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an

institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title.

The government counters this argument by relying on *United States v. Peterson,* 592 F.2d 1035 (9th Cir.1979). In *Peterson,* a sentencing judge ordered the defendant to "commence his sentence *now.*" *Id.* at 1036. He instructed the defendant's counsel to take the defendant downstairs to a Marshal. The defendant escaped while the attorney was taking him to the Marshal.[3] We upheld the escape conviction under section 751(a), pointing out that the defendant was quite aware that his sentence was to begin *"now."*

> A person of ordinary intelligence and understanding would know that he was not free to leave; that he was in 'custody under or by virtue of *any* process issued under the laws of the United States by [a] court, [or] judge,' (§ 751(a)) and that his then attorney, an officer of the court, was immediately the court's custodian for the purpose of transfering that custody to the Marshal.

*Id.* at 1037. The lesson that the government draws from this case is that "custody" begins at sentencing. It points out that the order sentencing Keller was phrased in the present, and the court's judgment recited that "defendant *is committed* to the custody of the Attorney General for imprisonment." (Emphasis added).

Keller contends that *Peterson* is distinguishable because the sentence was to immediate confinement—*"now."* The same distinction applies to another case that was relied on by *Peterson, Tennant v. United States,* 407 F.2d 52 (9th Cir.1969), where a customs inspector told a motorist that he was under arrest, and the motorist sped away and was later convicted of escape. Keller argues that his case is clearly different because the sentencing judge ordered that Keller was not to begin serving his sentence until August 10, 1987—some seventeen days after sentence was pronounced.

We agree that there are distinctions between *Peterson* and *Tennant* on the one hand, and Keller's case on the other. But the timing of the anticipated confinement is not, in our view, as important as the parties would make it. Reasonable minds can differ over the question whether Keller was in custody between July 23, the date of his sentencing, and August 10, when he was to report to the jail. We need not decide that question, because we have no doubt that he was effectively ordered into custody as of 4:00 p.m. on August 10. An instant later, he was an escapee.

The important point is that the sentence was imposed and was effective, without further contemplated action or order of the court, to cause Keller's legal confinement no later than 4:00 p.m. on August 10. If Keller's argument is that he must actually have been subject to physical restraint before he could escape, it is refuted by *Tennant, supra.* The motorist there was simply *told* that he was under restraint, and he drove away. If Keller's response to this point is that at least the motorist had been *informed* that he was under restraint, the reply is that Keller, too, had been informed that he was under restraint, at least as of 4:00 p.m. on August 10. Of course, it is important that he was not merely informed; he was sentenced. The custody that matured at 4:00 p.m. on August 10 was imposed "by virtue of ... process issued under the laws of the United States by [a] court, [or] judge," as specified by section 751(a).[4] *See Peterson,* 592 F.2d at 1037.

---

**3.** The attorney observed to the sentencing judge: "The Marshal's Office said they will not hire me since I failed my first assignment." *Peterson,* 592 F.2d at 1036.

**4.** Keller argues that failure to report to a prison would more appropriately be punished under 18 U.S.C. § 3146(a)(2), which provides punishment for anyone who "having been released under this chapter knowingly ... fails to surrender for service of sentence pursuant to court order." There is considerable doubt that this statute could be applied to Keller, because "this chapter" referred to in section 3146 is Chapter 207, the Bail Reform Act, specifying procedures and standards for release of persons pending trial, imposition or execution of sentence, or appeal. Keller does not appear to have been released pursuant to that chapter. We need not decide this question, however, for the possibility that section 3146 could apply does not preclude the application of §§ 751(a) and 4082(a). *See United States v. Duncan,* 693 F.2d 971, 975 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

Our conclusion that Keller escaped when he failed to report to the Residential Center is obliquely supported by our decision in *United States v. Overaker*, 766 F.2d 1326 (9th Cir.1985). Overaker was serving a sentence in federal prison in Minnesota and was permitted an unescorted transfer to a federal prison camp in Arizona. He failed to report as required in the transfer order, and was later apprehended and tried for escape in the District of Arizona. He contended that venue was improper, because he had never reported to the prison camp in Arizona and therefore could not have committed escape in that state. We held venue to be proper, because "Overaker was in the constructive custody of the Arizona authorities as soon as he was ordered to report to them." *Id.* at 1327. As Overaker could escape from a prison he never reached, so could Keller.

*Sufficiency of the indictment; sufficiency of the evidence*

Keller attacks the indictment on the ground that, in alleging a mere failure to report to the Residential Center, it failed properly to allege a crime under section 751(a) or section 4082(a). He also argues that evidence of a failure to report is insufficient evidence upon which to found a conviction of escape. Both of these arguments duplicate his statutory arguments, and fail for the same reasons.

*Jury instructions*

Over Keller's objection, the trial judge instructed the jury that custody begins when an order of the court is issued requiring a defendant to report to an institution to serve a sentence. The court refused to give Keller's requested instruction to the effect that Keller was in custody only if he had been "actually seized or ... surrendered to the authorities pursuant to the court order." From what we have already said, it is clear that Keller was not entitled to his requested instruction because it was not supported by law. *See United States v. Pace*, 833 F.2d 1307, 1314 (9th Cir.1987), *cert. denied*, 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988).

In rejecting Keller's statutory arguments, we found it unnecessary to decide whether Keller was in custody before 4:00 p.m. on August 10th, his scheduled reporting time. We also find it unnecessary to decide that point here. If the district court committed any error in telling the jury that custody began at sentencing, the error was clearly harmless. Custody began at the latest at 4:00 p.m. on August 10, 1987, and there was no dispute in the evidence that Keller failed to report at that time.

Keller argues that the whole question of custody was one for the jury, and that the court's instruction effectively removed a factual element from the jury's consideration. We disagree. The question that we addressed earlier in this opinion, whether the sentence caused Keller to be placed in a "custody" from which he could escape, is a legal question. The trial judge did not err in refusing to submit that issue to the jury as a fact question.[5]

## CONCLUSION

The judgment of the district court is AFFIRMED.

---

5. We note that our view parallels that of the Ninth Circuit Committee on Model Jury Instructions. *See Manual of Model Jury Instructions for the Ninth Circuit* § 8.08, Comment (West 1985) ("Whether the defendant is in custody, pursuant to process or lawful arrest, is a question of law for the court and need not be submitted to the jury in the absence of a factual dispute.")