**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Vaughn EVANS, Defendant–**
**Appellant.**

**No. 97–4707.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 25, 1998.

Decided Oct. 30, 1998.

West Virginia, for Appellant. William D. Wilmoth, United States Attorney, Clarksburg, West Virginia, for Appellee.

Before HAMILTON and MICHAEL, Circuit Judges, and MOON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge MICHAEL and Judge MOON joined.

## OPINION

HAMILTON, Circuit Judge:

Robert Vaughn Evans appeals his conviction for escape. *See* 18 U.S.C. § 751(a). For the reasons stated below, we affirm.

I

Evans was convicted of violating 18 U.S.C. § 922(g)(1) in the United States District Court for the Northern District of Florida. He was sentenced to thirty-five months' imprisonment, followed by three years supervised release. His supervised release term began on March 19, 1994, with his supervision later transferred to the Northern District of West Virginia.

On January 17, 1995, the United States Probation Office for the Northern District of West Virginia filed a petition to revoke Evans' supervised release. Following the issuance of an arrest warrant, Evans was arrested in Iowa. On February 6, 1995, Evans was transported to the Northern District of West Virginia by the United States Marshal Service and was housed in the Central Regional Jail.

On July 19, 1995, a circuit judge of the Circuit Court of Harrison County, West Virginia issued a writ of habeas corpus *ad prosequendum,* to allow the State of West Virginia to proceed with grand larceny charges against Evans. The writ directed the United States Marshal Service for the Northern District of West Virginia to "deliver the body of Robert Vaughn Evans to the custody of the Sheriff of Harrison County, West Virginia." (J.A. 36). The writ also directed the Sheriff of Harrison County to return Evans to the

**ARGUED:** Richard Wallace Shryock, Jr., Mullens & Regan, Elkins, West Virginia, for Appellant. Zelda Elizabeth Wesley, Assistant United States Attorney, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** R. Mike Mullens, Mullens & Regan, Elkins,

United States Marshal Service at the conclusion of the state court proceedings. On July 23, 1995, Evans was released to Harrison County Sheriff's deputies and was transported to the Harrison County Jail.

While in the Harrison County Jail, Evans suffered a seizure and on August 24, 1995 was transported to the United Hospital Center in Clarksburg, West Virginia by state authorities. On August 27, 1995, Evans escaped from the United Hospital Center while pretending to take a shower. Evans remained a fugitive until he was apprehended by United States marshals on February 6, 1996.

While Evans remained a fugitive, he was charged with escape, see 18 U.S.C. § 751(a), by a federal grand jury sitting in the Northern District of West Virginia in Count One of a five-count indictment.* Following a jury trial, Evans was convicted of escape and was sentenced to a term of imprisonment of sixty months, followed by a term of supervised release of three years. Evans noted a timely appeal.

## II

On appeal, Evans challenges the sufficiency of the evidence to support his § 751(a) conviction. We must sustain his conviction if there is substantial evidence to support it when the evidence and all reasonable inferences from it are viewed in the light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Burgos, 94 F.3d 849, 862–63 (4th Cir.1996) (en banc), cert. denied, — U.S. —, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997).

 Section 751(a) provides in relevant part:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both....

18 U.S.C. § 751(a). Section 751(a) requires the government to prove three elements. First, the government must satisfy § 751(a)'s custody/confinement requirement. The government can meet this burden by demonstrating that the defendant was (1) in the custody of the Attorney General or her authorized representative; (2) confined in an institution by direction of the Attorney General; (3) in custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate; or (4) in the custody of an officer or employee of the United States pursuant to a lawful arrest. Second, the government must satisfy § 751(a)'s offense requirement. To meet this burden, the government must demonstrate that the defendant's custody or confinement was by virtue of an arrest on a felony crime or a conviction for any offense. Finally, the government must prove that the defendant escaped from such custody or confinement. Although the term "escape" is not defined in § 751(a), the government meets its burden if it demonstrates that the defendant "absent[ed]" himself "from custody without permission." United States v. Bailey, 444 U.S. 394, 407, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

Evans makes two arguments attacking the sufficiency of the evidence to support his § 751(a) conviction. First, he contends that the government failed to prove that he escaped from the custody of the Attorney General or her authorized representative. Second, he contends that the government failed to prove that his custody was by virtue of an arrest for a felony crime or a conviction for any offense. We shall address each of these arguments in turn.

### A

 Evans contends that he was not in the custody of the Attorney General or her

---

* The remaining counts in the indictment pertain to a co-defendant who is not a party to this appeal.

authorized representative because at the time of his escape he was in state custody awaiting trial on state charges pursuant to a writ of habeas corpus *ad prosequendum* issued by the Circuit Court for Harrison County. According to Evans, a writ of habeas corpus *ad prosequendum* effectuates a change in custody whereby the sending jurisdiction loses escape jurisdiction and the receiving jurisdiction gains it. Therefore, Evans contends that if he was guilty at all of escape, it would be a West Virginia state charge of escape.

▮ The term "custody" is not defined in § 751. However, it is well-settled that § 751 was not intended by Congress to apply to persons who merely escaped from state custody. *See United States v. Depew,* 977 F.2d 1412, 1413 (10th Cir.1992). Rather, § 751 was intended to apply to "those escapees who were originally confined or in custody under federal law in the sense that they were held in custody of the Attorney General or in custody by an order or process issued under the laws of the United States by a competent court or official." *United States v. Howard,* 654 F.2d 522, 525 (8th Cir.1981). Further, "custody" does not require actual physical restraint. *See Depew,* 977 F.2d at 1414; *see also United States v. Keller,* 912 F.2d 1058, 1059–61 (9th Cir.1990) (escape when defendant failed to report to correctional facility to begin his sentence).

Evans concedes, as he must, that he was in federal custody while he was incarcerated at the Central Regional Jail. Consequently, Evans' argument rests on the proposition that the Attorney General relinquished custody of Evans, as the term "custody" is used in § 751(a), to state authorities when Evans was received by the state authorities from the federal authorities pursuant to the writ of habeas corpus *ad prosequendum.* This proposition we cannot accept.

The Supreme Court has examined in great detail the history of the writ of habeas corpus *ad prosequendum,* observing that § 14 of the first Judiciary Act, 1 Stat. 81, authorized federal courts to issue writs of habeas corpus. *See Carbo v. United States,* 364 U.S. 611, 614, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). Although § 14 of the first Judiciary Act did

not expressly state that courts could issue writs of habeas corpus *ad prosequendum,* the Supreme Court, in an opinion authored by Chief Justice Marshall, *Ex Parte Bollman,* 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807), interpreted the words "habeas corpus" as being a generic term including the writ "necessary to remove a prisoner in order to prosecute him in the proper jurisdiction wherein the offense was committed." *Carbo,* 364 U.S. at 615, 81 S.Ct. 338. This authority is now explicit under 28 U.S.C. §§ 2241(c) & (c)(5), which provide that the "writ of habeas corpus shall not extend to a prisoner unless ... [i]t is necessary to bring him to court to testify or for trial."

Writs of habeas corpus *ad prosequendum* are court orders demanding that an inmate be produced to face criminal charges. *See Stewart v. Bailey,* 7 F.3d 384, 389 (4th Cir. 1993) ("[W]rits of habeas corpus *ad prosequendum* are issued directly by a court of the jurisdiction where an indictment has been lodged against the prisoner.... [A writ of habeas corpus *ad prosequendum* ] is a court order requesting the prisoner's appearance in the summoning jurisdiction."). Such writs are "immediately executed," *United States v. Mauro,* 436 U.S. 340, 360, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), and, thus are unlike detainers which do not summon a prisoner to the requesting jurisdiction's courts. *See Stewart,* 7 F.3d at 389.

That a writ of habeas corpus *ad prosequendum* does not effect a transfer of custody for purposes of § 751(a) is confirmed by examining the term "custody" in 18 U.S.C. § 3585, the statute establishing when a federal sentence begins.

A federal sentence does not commence until the Attorney General receives the defendant into her "custody" for service of that sentence. *See* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody...."); *United States v. Pungitore,* 910 F.2d 1084, 1119 (3d Cir.1990) ("a federal sentence does not begin to run until the defendant is delivered to the place where the sentence is to be served"). When a federal court imposes a sentence on a defendant who is already in state custody, the federal sen-

tence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence. *See Barden v. Keohane*, 921 F.2d 476, 481–82 (3d Cir.1990); 18 U.S.C. § 3621(b) (vesting designation authority in the Bureau of Prisons).

■ A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum*. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation. *See Thomas v. Whalen*, 962 F.2d 358, 361 n. 3 (4th Cir.1992); *Thomas v. Brewer*, 923 F.2d 1361, 1366–67 (9th Cir.1991) (producing state prisoner under writ of habeas corpus *ad prosequendum* does not relinquish state custody).

■ This rule derives from the fact that the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities. *See Whalen*, 962 F.2d at 361 n. 3; *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C.Cir.1978) ("When an accused is transferred pursuant to a writ of habeas corpus *ad prosequendum* he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. Failure to release a prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner."). Principles of comity require that when the writ of habeas corpus *ad prosequendum* is satisfied, the receiving sovereign return the prisoner to the sending sovereign. As Chief Justice Taft explained in *Ponzi v. Fessenden*, 258 U.S. 254, 260, 42 S.Ct. 309, 66 L.Ed. 607 (1922):

> The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose.

It follows that if the sending jurisdiction in the § 3585 context does not relinquish its custodial authority over the prisoner when the prisoner is sent to the receiving jurisdiction pursuant to a writ of habeas corpus *ad prosequendum*, the same rationale should apply with equal force in the § 751(a) context. In each context, the sending jurisdiction has a significant interest in retaining custodial authority over the prisoner. To hold otherwise, would frustrate comity principles dating back to the first Judiciary Act, and, in fact, would encourage sovereigns not to honor writs of habeas corpus *ad prosequendum*.

Our decision is bolstered by four further points. First, Evans concedes that all of the time he served in the Harrison County Jail and the United Hospital Center awaiting the disposition of the state charges counts toward satisfying the term of imprisonment imposed for violating the terms of his federally imposed supervised release. If Evans was in federal custody for purposes of calculating time served, it follows that the Attorney General did not relinquish custody of Evans as that term is used in § 751(a). Second, the federal government has a significant and substantial interest in keeping prisoners confined and preventing them from escaping. This federal interest is embodied in § 751(a). The federal interest at stake does not dissipate by virtue of a writ of habeas corpus *ad prosequendum* issued to federal authorities by a state court. In fact, the opposite is true. The prisoner is released to state authorities with the understanding that the prisoner will remain confined and will be returned to federal authorities once the proceedings in state court have concluded. Thus, our interpretation of § 751(a) furthers the significant and substantial federal interest embodied in § 751(a). Third, the term "custody" in § 751(a) has never been interpreted to require actual physical restraint of the prisoner. *See Depew*, 977 F.2d at 1414; *Keller*, 912 F.2d at 1059–61. In our view, there is no meaningful difference for custody purposes between a defendant who fails to report for the commencement of his prison sentence on the one hand, as in *Keller*, and on the other a defendant who escapes while he is being prosecuted in another jurisdiction pursuant to a writ of habeas corpus *ad prosequendum*. In each instance, the Attorney

**913**

General's custodial rights are vested and cannot be superseded. Finally, our decision is consistent with decisions from our sister circuits that have upheld § 751(a) convictions in similar, though not identical, circumstances. *See Depew,* 977 F.2d at 1414 (§ 751(a) conviction upheld where federal prisoner attempted to escape in the presence of an undercover United States marshal while being transported by a county sheriff's deputy to state court pursuant to writ of habeas corpus *ad prosequendum* ); *United States v. Stead,* 528 F.2d 257, 258–59 (8th Cir.1975) (§ 751(a) conviction upheld where federal prisoner escaped from county jail after testifying pursuant to a writ of habeas corpus *ad testificandum* ). In summary, we have no doubt that Evans, at the time he escaped from the United Hospital Center, was in the custody of the Attorney General or her authorized representative as the term "custody" is used in § 751(a).

B

We now turn to Evans' contention that the government failed to meet its burden on § 751(a)'s offense requirement, which provides that a defendant's custody must be "by virtue of an arrest on a charge of felony, or conviction of any offense. . . ." According to Evans, because he escaped before his supervised release was revoked and a sentence of imprisonment was imposed for violating the terms of his supervised release, his confinement was not "by virtue of a[ ] . . . conviction of any offense. . . ." 18 U.S.C. § 751(a). We disagree.

The phrase "by virtue of" is not defined in § 751(a). However, the dictionary, as well as common sense, defines the phrase as "[o]n the grounds or basis of; by reason of." *The American Heritage Dictionary of The English Language, New College Edition,* 1432 (1976). Thus, the merits of Evans' argument turns on whether Evans' custody for violating the terms of his supervised release was by reason of his § 922(g)(1) conviction.

 Evans was convicted of violating § 922(g)(1). His sentence for that offense included a period of incarceration and a period of supervised release. He was placed on supervised release following his satisfactory completion of the term of imprisonment. He was arrested for allegedly violating the terms of his supervised release. Because the con-

duct underlying the revocation of Evans' supervised release formed the basis of Evans' incarceration, it follows that his incarceration for violating the terms of his supervised release was by reason of his § 922(g)(1) conviction. *Cf. United States v. Pynes,* 5 F.3d 1139, 1140 (8th Cir.1993) (applying USSG § 2P1.1(a)(1), which provides for an offense level of thirteen if the "custody or confinement is by virtue of a[ ] . . . conviction of any offense," to Pynes who escaped following the revocation of his supervised release because "Pynes was on supervised release by virtue of his original felony conviction, and hence upon revocation of his supervised release was in custody for 'conviction of any offense.' "). Without the § 922(g) conviction, his sentence that included a term of supervised release, and the alleged violation of the terms of the supervised release, there was no legal basis for federal authorities to apprehend and incarcerate Evans.

Evans' claim also founders because it is premised on the proposition that his custody was not part of his original sentence for violating § 922(g)(1). However, the term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence. *See United States v. Woodrup,* 86 F.3d 359, 361 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 332, 136 L.Ed.2d 245 (1996). This explains why the *Ex Post Facto* Clause prohibits legislative changes in the terms of supervised release following the commission of the original offense, and why the Double Jeopardy Clause does not prohibit the government from prosecuting and punishing a defendant for an offense which has formed the basis for revocation of supervised release. *See id.* at 361–63. Accordingly, we hold that Evans' custody was "by virtue of" his § 922(g)(1) conviction.

III

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED.*