**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

ANTHONY EDYLE BURKE,
            *Defendant-Appellee.*

No. 11-30140

DC No.
CR 11-0044 EFS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
April 10, 2012—Seattle, Washington

Filed September 13, 2012

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Callahan

___

**COUNSEL**

Joseph H. Harrington, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellant.

Peter S. Schweda, Spokane, Washington, for the defendant-appellee.

___

**OPINION**

TASHIMA, Circuit Judge:

The government appeals the district court's dismissal of an indictment charging Anthony Edyle Burke with escape from custody in violation of 18 U.S.C. § 751(a). The district court concluded that Burke was not in "custody" within the meaning of § 751(a) when he left the residential reentry center where he was residing as a condition of his supervised release. We agree and affirm.

**I.**

In 2008, Burke pleaded guilty to a violation of 18 U.S.C. § 922(g)(4) and was sentenced to 37 months in prison, followed by 3 years of supervised release. Upon his release from

the custody of the Bureau of Prisons ("BOP"), Burke violated the terms of his supervised release when he failed to report to his probation officer to commence a 180-day stay in a residential reentry center. After a revocation hearing, Burke was sentenced to be incarcerated for another 7 months and 21 days, followed by a 28-month term of supervised release. Burke's conditions of supervised release ordered:

> Defendant shall reside in a residential reentry center for a period up to 180 days. This placement may include a pre-release component, day reporting and home confinement (with or without electronic monitoring but not to include GPS) at the direction of the CCM and USPO. Defendant shall abide by the rules and requirements of the facility, Defendant shall remain at the facility until said 180 days has been completed.

Burke completed his prison term and commenced supervised release on March 19, 2010. In compliance with the conditions of his supervised release, he began residing at the Spokane Residential Reentry Center ("SRRC").

On April 27, 2010, Burke checked out of SRRC and failed to return. As a result, SRRC reported him to his probation officer as an "absconder." The next day, state authorities arrested Burke in Montana. Burke was returned to Washington to appear for his supervised release violations. On March 22, 2011, the grand jury returned an indictment charging Burke with escape from custody in violation of § 751(a).

Burke moved to dismiss the indictment, arguing that he was not in "custody" within the meaning of § 751(a). The government opposed the motion. The district court reviewed the conditions of Burke's supervised release, including the rules and restrictions set forth in SRRC's resident handbook, and granted the motion. It explained:

[SRRC] is part of supervised release in this case. It is a court order after imprisonment is served and the person is no longer in custody, designed specifically in a case like Mr. Burke . . . to provide him with a transition from custody to the community in a way that enables him to make a smooth transition, since he is essentially homeless; and that was the driving or motivating factor in the Court's imposition of this term — that Mr. [Burke] had nothing and nowhere to go. And this simply gave him the opportunity to transition. It was by no means, by letter or in spirit, a custodial order of the Court; and therefore, the Court grants the motion.

The government timely filed this appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's interpretation of § 751(a). *United States v. Wilbur*, 674 F.3d 1160, 1170 (9th Cir. 2012). We review the district court's findings of fact with regard to the motion to dismiss the indictment for clear error. *Id.*

## III.

[1] 18 U.S.C. § 751(a) provides:

Whoever escapes . . . from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony . . . be fined . . . or imprisoned . . . or both . . . .

We have not previously addressed whether an individual who has completed his term of imprisonment and is residing at a halfway house or residential reentry center according to the court-ordered conditions of his supervised release is in "custody" within the meaning of § 751(a). We have, however, held that a defendant released on a personal recognizance bond and ordered by a court to reside at a halfway house pending trial is not in "custody" for purposes of that statute. *United States v. Baxley*, 982 F.2d 1265 (9th Cir. 1992).

The district court relied on our decision in *Baxley* to dismiss the indictment against Burke. The government argues that this reliance was misplaced because the circumstances of Burke's release were different from those presented in *Baxley* and more closely resembled incarceration. In support of this argument, the government points to SRRC rules that established a curfew, limited visitors, assigned beds, restricted telephone use, and required residents to advise staff of their comings and goings in order to leave the premises. However, the district court examined the rules and requirements at SRRC and found that they mirrored standard supervised release conditions. It stated that its finding was consistent with the general understanding that restrictions at a halfway house are significantly less than those at a custodial facility. The court therefore concluded that the SRRC rules identified by the government were not sufficient to constitute "custody" for purposes of § 751(a).

**[2]** We agree that Burke was not in "custody" when he left the SRRC. He was not serving a prison sentence, nor was he confined to SRRC under conditions equivalent to custodial incarceration. Although the government argues that rules governing Burke's daily activities at SRRC distinguish this case from *Baxley*, our opinion in that case contains no indication that similar restrictions on telephone use or meal times, for example, were not in place at Baxley's halfway house. Like Baxley, residents at SRRC were free to be employed outside the center, and to come and go during the day with permission

if they logged in and out. *See Baxley*, 982 F.2d at 1269. The government stresses that SRRC put residents on "escape or abscond status" if they failed to return timely to the center, but similar restrictions on movement were imposed on Baxley. The halfway house where Baxley resided listed him as an "escapee" when he was not present within two hours of his estimated time of return. *Id.* at 1267.

**[3]** Burke was not in "custody" when he left the SRRC because the conditions of his release "were much more analogous to probation than they were to imprisonment." *Id.* at 1269. As we held in *Baxley*:

> [I]ndividuals on probation are conditionally released from incarceration, must maintain a particular residence or notify the court of changes, are subject to travel restrictions, and must report regularly to government officials. If an individual violates probation, he is not tried for escape; rather, his probation is revoked, and he can be indicted for escape only if he *thereafter* fails to report for custodial incarceration.

*Id.* at 1269-70. Like an individual on probation, Burke was conditionally released from incarceration; his failure to return to SRRC was a violation of his release conditions punishable by revocation of release, not an escape from "custody" within the meaning of § 751(a).[1]

The government argues that the district court should have looked to our opinions in *United States v. Keller*, 912 F.2d 1058 (9th Cir. 1990), and *United States v. Jones*, 569 F.2d 499 (9th Cir. 1978), to hold that Burke escaped from custody in violation of § 751(a). But there is a crucial distinction between Burke and the defendants in *Keller* and *Jones*: the latter were committed to BOP custody when they absconded.

---

[1]Indeed, Burke was later sentenced to 12 months in prison and 9 months of supervised release for violating the terms of his supervised release.

*See Keller*, 912 F.2d at 1059-60 (noting that Keller was "committed to the Attorney General for imprisonment" and "ordered into custody"); *Jones*, 569 F.2d at 500 (addressing situation of a prisoner committed to a "pre-release or half-way house program by designation of the Attorney General"). In contrast, Burke had completed his prison term and was no longer in BOP custody when he left SRRC.

Moreover, as we recognized in *Baxley*, *Jones* never addressed what "custody" means under § 751(a). *See Baxley*, 982 F.2d at 1269 n.8 ("[D]icta in *United States v. Jones* . . . gave an interpretation of the term as it was used in an entirely different statute (18 U.S.C. § 4082(d)) . . . and . . . addressed only an issue involving jury instructions and not the question presented here."). The plain language of the *Jones* opinion indicates that the Court did not reach the question presented in this case. *See* 569 F.2d at 500 ( "This appeal presents a single issue: Does a charge of escape under 18 U.S.C. § 751 require proof of intent to avoid confinement?").

Finally, the government urges this Court to follow the Tenth Circuit's decision in *United States v. Sack*, 379 F.3d 1177 (10th Cir. 2004), although it acknowledges that *Sack* expressly rejected *Baxley* and adopted a definition of "custody" far broader than the one recognized by our Circuit.[2] *Id.* at 1181; *see also id.* at 1180 n.2 (indicating individual could be prosecuted under § 751(a) for violating condition of release requiring her to reside with family member). Even if we could do so, we decline to disregard our own precedent in favor of *Sack*'s expansive reading of the term. Our approach is supported by the rule of lenity, which requires us to resolve ambiguity in favor of the defendant and give effect to the more lenient construction of the term "custody." *See Liparota*

---

[2]The dissent's assertion that *Sack* is reconcilable with *Baxley*, "if we hold in this case that Burke was in 'custody,' " Dissent at 11232, is perplexing in light of *Sack*'s express rejection of *Baxley. See Sack*, 379 F.3d at 1181 ("[W]e are not persuaded by the reasoning in *Baxley*.").

*v. United States*, 471 U.S. 419, 427 (1985) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (citation omitted)); *Baxley*, 982 F.2d at 1270.[3]

## IV.

For the foregoing reasons, the order of the district court dismissing the indictment is

**AFFIRMED.**

---

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent because I would hold that Burke was in custody. Our decisions have determined "custody" in contexts such as Burke's by examining two factors: (1) the circumstances of the release, and (2) the extent of the restrictions on the defendant's freedom. *See, e.g.*, *United States v. Baxley*, 982 F.2d 1265, 1269 (9th Cir. 1992); *United States v. Jones*, 569 F.2d 499 (9th Cir. 1978); *see also United States v. Sack*, 379 F.3d 1177, 1179 (10th Cir. 2004). Here, Burke was afforded supervised release to the Residential Reentry Center (the "RRC") as part of his sentence. Moreover, the restrictions on his freedom at the RRC "approached those of incarceration." *See Baxley*, 982 F.2d at 1269. Accordingly, I would hold that Burke escaped from "custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge," 18 U.S.C. § 751(a), and would affirm.

---

[3]The case relied on by the dissent, *see* Dissent at 11228 n.2, *Reno v. Koray*, 515 U.S. 50 (1995), is not to the contrary. Here, as in *Reno*, "we can make no more than a guess as to what Congress intended." *Id.* at 65.

## I.   Analysis

### A.   "Custody" in the Residential Reentry Center Context

The issue presented by this appeal is whether Burke was in "custody" at the RRC as that term is used in 18 U.S.C. § 751(a).[1] The government has the burden of establishing probable cause that a defendant was in "custody" within the meaning of the statute in order for the indictment to survive a motion to dismiss. *See United States v. Gowdy*, 628 F.3d 1265, 1267 (11th Cir. 2010). We have eschewed bright-line rules defining "custody" under § 751(a) and have consistently held that the definition varies "in meaning when used in different contexts."[2] *Baxley*, 982 F.2d at 1269 (quoting *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990)). In the residential reentry center/halfway house context, our case law has developed a definition of "custody" by focusing on the circumstances of the release and the extent of the restrictions on the defendant's freedom. We have held that custody "need not involve direct physical restraint" and may be "minimal" or "constructive." *United States v. Keller*, 912 F.2d 1058, 1059 (9th Cir. 1990). Here, the government has established probable cause that Burke was in custody when, as part of his sentence of super-

---

[1]I agree with the majority that we review the court's order dismissing Burke's indictment based on its interpretation of the federal statute de novo. *See United States v. Gomez-Rodriguez*, 96 F.3d 1262, 1264 (9th Cir. 1996) (en banc).

[2]Even though the definition of "custody" is analyzed on a case-by-case basis, the meaning of the word is not ambiguous such that the rule of lenity should apply. "A statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction. The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *Reno v. Koray*, 515 U.S. 50, 64-65 (1995) (internal quotation marks and citations omitted). The Ninth Circuit, as well as other federal courts, have successfully determined Congress's intent in determining "custody" in particular cases. No court has concluded that the word "custody" is too ambiguous to construe in this context.

vised release, he was released from prison to the RRC, and that facility imposed substantial restrictions on his freedom.

## B. The Circumstances of the Release in Burke's Case

We have held that a person may be in "custody" for purposes of § 751(a) when released to a halfway house or residential reentry center. In *Jones*, a convicted inmate was released from prison into a halfway house at the direction of the Attorney General. *Jones*, 569 F.2d at 500. He then failed to return from a weekend pass. *Id.* We concluded that Jones had escaped from custody. *Id.* at 500-01. In *Keller*, the defendant was serving a term of probation. *Keller*, 912 F.2d at 1059. He violated the terms of his probation, which the court then revoked, allowing him two weeks to wind up his affairs and report to his place of confinement. *Id.* Keller failed to report, and we affirmed his conviction for escape. *Id.* at 1058-59. We reasoned that indicators of "custody" are whether "[a] person of ordinary intelligence and understanding would know that he was not free to leave" and "that he was in 'custody under or by virtue of *any* process issued under the laws of the United States by [a] court, [or] judge.' (§ 751(a))." *Id.* at 1060 (quoting *United States v. Peterson*, 592 F.2d 1035, 1037 (9th Cir.1979)).

The majority seeks to distinguish *Jones* on the ground that Jones, unlike Burke, was placed in a halfway house "by designation of the Attorney General." Maj. Op. at 11226. But this distinction has little legal significance. The statute defines "custody" as including "custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge." 18 U.S.C. § 751(a). While Burke may have completed his prison term, he had not completed the sentence ordered by the court, which included a period of supervised release to the RRC, and his freedom remained restricted.

The majority reads our opinion in *Baxley* as modifying our rulings in *Jones* and *Keller*. Maj. Op. at 11225-26. However,

*Baxley* turned on the fact that the defendant was released pending trial on a personal recognizance bond with a special condition that he reside at a halfway house. *Baxley*, 982 F.2d at 1266-67. In concluding that Baxley was not "in custody" for purposes of conviction under the escape statute, we emphasized that Baxley was an unconvicted criminal defendant on a pre-trial release: "Baxley was assigned to the Clark Center not as part of his sentence after trial, but pursuant to the conditions of a personal recognizance bond." *Id.* at 1269. Although *Jones* does not state that Jones was on supervised release as Burke was, it does say that *after* Jones's commitment to prison, he "was released to a contract 'half-way house.' " *Jones*, 569 F.2d at 500. Thus, in *Baxley*, we found *Jones* distinguishable precisely because it "involved *post-incarceration* release to a halfway house." *Baxley*, 982 F.2d at 1269 n.8.

Furthermore, in *Baxley*, we recognized that there are different fundamental concerns that arise on a *pre-trial* personal recognizance release, where the aim is to ensure that an unconvicted defendant appears for trial, as contrasted with a situation where a convicted inmate is assigned to a halfway house as part of his sentence of supervised release. *See Baxley*, 982 F.2d at 1269. Here, Burke was on supervised release that was part of his sentence, rather than a pre-trial recognizance release as in *Baxley*. Thus, Burke's release from the Bureau of Prisons did not constitute a release from custody as directed by the district court, and he was still in "custody" under § 751(a).

## C.   The Extent of the Restrictions on Burke's Freedom

We have long held that the touchstone of whether a defendant is in custody is whether he should have reasonably understood that he was not "free to leave." *Keller*, 912 F.2d 1058, 1060. Here, Burke could not have reasonably felt "free to leave" and not return at the appointed time. The RRC expressly warned him that he could not come and go from the

facility as he pleased and that he would be placed on "escape or abscond status" if he left without permission or failed to timely return. Among numerous other restrictions placed on Burke were that all requested absences from the RRC required advance approval and had to be for narrowly permitted purposes. The RRC imposed restrictions such as bed assignments, eating and cleaning protocol, daily activities, job assignments at the residence, limitations on phone calls, limitations on personal property, and limitations on visitors. Moreover, the residents' living quarters were subject to random searches for contraband. Residents at the RRC could not have phones or pagers without permission and even then, only for employment purposes, and residents were subject to random and scheduled urinary and breathalyser tests as well as pat-down searches. Other than the fact that Burke could—occasionally and under very narrow circumstances—leave the RRC, the restrictions are quite different from probation and approached those of incarceration.

The importance of the extent of the restrictions on a defendant's perceived freedom is illustrated by *Baxley* and *Person*. *See Baxley*, 982 F.2d at 1269; *United States v. Person*, 223 F. Supp. 982 (S.D. Cal. 1963) (holding that a parolee living at a halfway house who could come and go each day was not sufficiently restricted to be in "custody" for purposes of the escape statute). In those cases, the defendants had the freedom to generally come and go as they pleased as long as they gave notice to the facility. *See Baxley*, 982 F.2d at 1269; *Person*, 223 F. Supp. at 984-86. Both Baxley and Person were reasonably "free to leave" as that phrase is defined in *Keller*, 912 F.2d at 1060.

In contrast, Burke was expressly warned that he needed advance permission to leave, could do so "for necessary business only," and would be placed on "escape or abscond status" if he left without permission or failed to timely return to the RRC. Everything about Burke's daily life was controlled and scheduled. Thus, the restrictions on Burke's freedom

were much more strict than those in *Baxley*, where the court concluded that "[t]he restrictions on Baxley's activities were slight" and "[i]n no way did Baxley's 'conditions of confinement approach[ ] those of incarceration.' " *See Baxley*, 982 F.2d at 1269 (quoting *Grady v. Crabtree*, 958 F.2d 874, 875 (9th Cir.1992) (per curiam)).

Finally, the majority's expansive reading of *Baxley* is in tension with the opinions of the Sixth and Tenth Circuits. *See Sack*, 379 F.3d at 1179-80 (holding that Sack was in custody when released to a halfway house where the restrictions at the halfway house were similar to the restrictions at Burke's RRC); *United States v. Swanson*, 253 F.3d 1220, 1223-24 (10th Cir. 2001) ("Life at a halfway house undoubtedly entails fewer restrictions than life in prison, but one who lives there under court order is not free to come and go at will. In that respect, residence at a halfway house is a form of 'custody.' "); *United States v. Rudinsky*, 439 F.2d 1074, 1076-77 (6th Cir. 1971) (finding that the defendant was in custody where he was substantially deprived of "freedom of movement and association" while confined at a community treatment center). These decisions are reconcilable with our precedent in *Baxley* and *Jones*, but only if we hold in this case that Burke was in "custody."

*Sack* is particularly instructive. There, the Tenth Circuit concluded that the defendant was in "custody" within the meaning of the escape statute while residing in a halfway house pursuant to pretrial release because he was there as a result of an order of the district court and his freedom of movement was restricted. *Sack*, 379 F.3d at 1179-80. Even though *Sack* involved a pretrial release like that in *Baxley*, the court found *Baxley* distinguishable because the Ninth Circuit "focused on whether the specific conditions of residence at a halfway house were sufficiently restrictive to constitute custody" and thereby concluded that Baxley did not have extensive restrictions on his freedom. *Id.* at 1180-81. In contrast, the Tenth Circuit concluded in *Sack* that the district court was in

control of Sack's liberty pending trial, and he was only permitted to leave the halfway house for employment purposes and was not able to come and go as he pleased, as in *Baxley*. *Id.* at 1178, 1181-82. Thus, even though Sack was on a pretrial release, the restrictions on his freedom were sufficiently onerous to constitute "custody." *Id.*; *see also Swanson*, 253 F.3d at 1223-24 (holding that "residence at a halfway house is a form of 'custody' " under the escape statute).

All of these cases from our circuit and our sister circuits can be reconciled through the reasonable application of our two inquiries for determining custody: (1) what are the circumstances of the release, and (2) what are the restrictions on the defendant's freedom. I would hold that Burke's court-ordered supervised release to the RRC was custodial under § 751(a) and that the restrictions on his freedom were more analogous to incarceration than probation.

## II.   CONCLUSION

The record demonstrates that Burke was in custody when he escaped from the RRC. Burke has failed to demonstrate that he reasonably felt free to leave and not return to the RRC. First, Burke was subject to a post-incarceration release, which is distinguishable from a pre-trial release both in purpose and in restraint. Second, Burke was subject to severe restrictions on his freedom at the RRC, approaching those of incarceration. Consequently, Burke's case falls closer on the spectrum to the cases where courts have found a defendant residing at a halfway house or RRC to be in "custody" than to those that have not. The majority's reasoning thus unduly expands *Baxley* and creates an unnecessary circuit split. Because there was at least probable cause that Burke was in custody sufficient to sustain the indictment, I would reverse the district court's dismissal of the indictment.