**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4296
_____

UNITED STATES OF AMERICA

v.

KEVIN WILLIAM SMALL,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-12-cr-00067-001)
District Judge:  Hon. Gene E.K. Pratter

Argued:  October 1, 2014
_____

Before:  AMBRO, CHAGARES, and VANASKIE, <u>Circuit Judges</u>.

(Filed:  July 13, 2015)

Eleni Kousoulis, Esq. [ARGUED]
Tieffa N. Harper, Esq.
Office of Federal Public Defender
800 King Street, Suite 200
Wilmington, DE 19801
     <u>Attorneys for Appellant</u>

Peter J. Smith
Christy H. Fawcett, Esq. [ARGUED]
Office of United States Attorney
228 Walnut Street, Suite 220
Harrisburg, PA 17108

Attorney for Appellee

_____

OPINION

_____

CHAGARES, Circuit Judge.

Kevin William Small was convicted of tax fraud in federal district court while he still had time left to serve on a Pennsylvania state prison sentence. He arranged for a forged court order purporting to vacate his federal sentence to be presented to Pennsylvania state prison officials and, as a result, was released at the end of his state sentence rather than turned over to federal officials to begin serving his federal sentence. This case presents the question of whether Small thereby escaped from "custody" within the meaning of the federal escape statute, 18 U.S.C. § 751. We hold that he did, and we will affirm the judgment of the District Court.

I.

On October 5, 2007, Small was sentenced by a federal court to 135 months of imprisonment for filing false tax returns. He was serving a separate sentence in Pennsylvania state prison at that time, and the District Court ruled that his federal sentence was to be served consecutive to his state sentence. After sentencing, he was returned to the Pennsylvania State Correctional Institution at Huntingdon ("Huntingdon") to serve the remainder of his state sentence. The U.S. Marshal subsequently served the Commonwealth Department of Corrections with a document entitled "Detainer Based on Federal Judgment and Commitment," which governed Small's transfer to federal authorities upon completion of his state sentence.

In October 2011, the records staff at Huntingdon received documents in the mail, ostensibly from the Clerk of Court for the United States District Court for the Middle District of Pennsylvania, but which in reality were forgeries sent at Small's direction. The documents appeared to bear the

Clerk's signature and directed the entry of an accompanying order, supposedly issued by the District Court, vacating Small's federal conviction and sentence. The order appeared to have been signed by Judge Christopher C. Conner and to bear the District Court's official seal. The officials at Huntingdon accepted the papers, and Small was released upon the completion of his state sentence in January 2012, unbeknownst to federal authorities. In March 2012, a federal agent learned of Small's release from Huntingdon and his failure to begin his federal sentence. Federal agents quickly located and arrested Small.

Small was indicted and charged with several crimes: forging the signature of a United States judge, forging a seal of a United States agency, mail fraud, conspiracy, and, the only relevant crime for our purposes, escape. Small filed a motion to dismiss the escape charge on the ground that he was never in federal custody, a requisite element of the crime. His motion was denied by the District Court on April 30, 2013. He subsequently entered an "open plea" of guilty to all counts and was sentenced to a term of 60 months of imprisonment on each count, to be served concurrently with one another but consecutively to his tax fraud sentence. Small timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We "apply a mixed standard of review to a district court's decision on a motion to dismiss an indictment, exercising plenary review over legal conclusions and clear error review over factual findings." United States v. Stock, 728 F.3d 287, 291 (3d Cir. 2013).

## III.

Small raises two arguments on appeal: first, that he may challenge the sufficiency of Count III of the superseding indictment despite his unconditional guilty plea, and, second,

3

that Count III of the superseding indictment is insufficient on its face.

As a threshold matter, Small is correct that he may challenge the sufficiency of his indictment, and the Government does not argue otherwise. However, Small's arguments regarding the sufficiency of the indictment are unavailing.

## A.

Former Federal Rule of Criminal Procedure 12(b)(3)(B), in effect when this case was briefed and argued,[1] provided that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Even when a defendant enters an unconditional guilty plea, Rule 12(b)(3)(B) permits the defendant "to challenge for the first time on appeal the sufficiency of his superseding indictment." United States v. Hedaithy, 392 F.3d 580, 589 (3d Cir. 2004). The Government does not dispute that Small may challenge the sufficiency of the indictment at this stage. Accordingly, we consider Small's appeal on the merits.

## B.

## 1.

Small argues that the Government's indictment was insufficient to make out a violation of the escape statute, 18 U.S.C. § 751, either because it incorrectly stated the basis for Small's state custody or because neither the federal detainer nor the District Court's judgment of conviction and sentence satisfied the custodial requirement of the statute. To be sufficient, an indictment must allege that the defendant performed acts which, if proven, constitute a violation of the

---

[1] The Rule has since been amended, with the amendments taking effect on December 1, 2014. See Order of the United States Supreme Court Amending the Federal Rules of Criminal Procedure (April 25, 2014), available at http://www.supremecourt.gov/orders/courtorders/frcr14_khlo.pdf.

law that he is charged with violating.  See Hedaithy, 392 F.3d at 589.  In this case, the statute provides:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . . .

18 U.S.C. § 751(a).  The Government meets its burden of proving a violation of the statute by establishing that the defendant "absent[ed]" himself "from custody without permission."  United States v. Bailey, 444 U.S. 394, 407 (1980).  This case presents the question of whether Small was ever in "custody" within the meaning of the statute.

On its face, the statute requires the Government to demonstrate that one of the following was true at the time of escape:  (1) the defendant was in the custody of the Attorney General or an authorized representative; (2) the defendant was confined in an institution at the direction of the Attorney General; (3) the defendant was in custody by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge; or (4) the defendant was in the custody of an officer or employee of the United States pursuant to a lawful arrest.  See 18 U.S.C. § 751(a).  Other Courts of Appeals have also applied this straightforward reading of the statute.  See, e.g., United States v. Gowdy, 628

5

F.3d 1265, 1267 (11th Cir. 2010); United States v. Evans, 159 F.3d 908, 910 (4th Cir. 1998).

This case implicates the third prong — that the defendant was in custody "by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge." 18 U.S.C. § 751(a). At oral argument, the Government argued that the predicate "process issued" it relies upon is the District Court's judgment of conviction and sentence, not the federal detainer lodged with officials at Huntingdon. Of course, because of the means by which Small effected his escape, he was never in the physical custody of the federal government or its agents. The statute, however, specifies many forms of restraint from which a person may escape, including from an "institution," from "custody . . . by virtue of . . . process," or from "custody . . . pursuant to lawful arrest." Id. Although it does not define the word "custody," we believe the various kinds of restraints enumerated indicate Congress's intent that the statute be applied broadly to those who would avoid a sentence they are required by law to serve. A reading of the statute that limits "custody" to physical restraint would also read the word "confinement" out of the portion of the statute specifying the penalty for its violation. See id. ("Whoever escapes . . . shall, if the custody or confinement is by virtue of arrest on a charge of felony [be sentenced.]" (emphasis added)). Thus, we agree with other Courts of Appeals that have held that "custody does not require 'direct physical restraint' and may be 'minimal' or 'constructive.'" Gowdy, 628 F.3d at 1267 (quoting United States v. Depew, 977 F.2d 1412, 1414 (10th Cir. 1992)); see also United States v. Keller, 912 F.2d 1058, 1059 (9th Cir. 1990); United States v. Cluck, 542 F.2d 728, 731 (8th Cir. 1976).[2]

---

[2] As the Court of Appeals for the Eleventh Circuit has noted, in 2006 and 2007 nearly forty percent of escape crimes involved "failures to report or return," where the defendant simply did not show up to begin serving a sentence or failed to return from an authorized period of absence and therefore was not in physical custody at the time of escape. Gowdy, 628 F.3d at 1268 (citing Chambers v. United States, 555 U.S. 122, 129 (2009)).

The Court of Appeals in Gowdy faced facts nearly identical to those presented by this appeal, except that the defendant in that case was arguably less culpable than Small. In Gowdy, the defendant was supposed to serve a federal sentence after two state sentences ended, one in Mississippi and one in Alabama. Gowdy, 628 F.3d at 1266. At some point, officials in Mississippi lost Gowdy's federal detainer and thus failed to transfer it to the Alabama correctional officials. Id. Gowdy was released upon completion of his Alabama state sentence and was later charged with escape once federal officials realized the error. Id. at 166–67.

The Gowdy court upheld his conviction, holding that "the custodial requirement of § 751(a) is satisfied where a lawful judgment of conviction has been issued by a court against the defendant." Id. at 1268. Other Courts of Appeals have similarly held that the elements of escape are established in the analogous situation where a defendant fails to report to begin a sentence. See, e.g., United States v. Hart, 578 F.3d 674, 681 (7th Cir. 2009) (holding that "[i]t is clear from our cases that the [escape] statute prohibits not only escapes from secure custody, but also walkaways from nonsecure custody and failures to report at the end of an authorized period of freedom"); United States v. Keller, 912 F.2d 1058, 1059–60 (9th Cir. 1990) (holding that the defendant's failure to report to a place of confinement at an appointed date and time qualified as an escape from federal custody).

Small argues that the Gowdy court's definition of custody was too broad and that we should not follow it. We are unpersuaded. As the court there pointed out, the purpose of § 751(a) is "to protect the public from the danger associated with federal criminals remaining at large." Gowdy, 628 F.3d at 1268. An interpretation of the term "custody" that includes individuals subject to federal judgments of conviction advances that purpose, as those who are convicted but never physically transferred to federal custody are "federal criminals remaining at large."

Small attempts to distinguish the cases upon which the Gowdy court relied by noting that in many of those cases the defendants had been, at some point, in "direct physical custody." Small Br. 23. However, Small fails to explain why

7

this distinction makes a difference or to what extent it should inform our analysis of a different part of the statute, which does not require direct physical custody at any point by the Attorney General or her agents. Indeed, Small's proposed interpretation of the statute would essentially read out the section criminalizing escape from "custody . . . by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge." 18 U.S.C. § 751(a). That clause of the statute has no "direct" custody requirement. And, as the Court of Appeals for the Tenth Circuit recently reaffirmed, "escape charges are not limited to defendants who were previously in the custody of the Attorney General." United States v. Foster, 754 F.3d 1186, 1190 (10th Cir. 2014). Constructive custody under that provision of the statute is established simply by virtue of the process issued by the judge, in this case the judgment of conviction entered by the District Court.

In sum, we hold that the custodial requirement is satisfied if a lawful judgment of conviction has been issued by a federal court against the defendant. As Small does not dispute that he was lawfully convicted and sentenced in 2007 for filing false tax returns, that conviction is sufficient "process" under the statute to have placed him in the constructive custody of the federal government on completion of his state sentence such that his actions to avoid serving his federal sentence constitute the crime of escape.

2.

Small also argues that the language of the indictment is contradictory and fails to support the Government's contention that Small was in federal custody. Count I of the indictment states that "Huntingdon State Prison officials released the defendant . . . upon the expiration of his state sentence rather than relinquishing him to the custody of the Attorney General of the United States to serve his federal sentence." Appendix ("App.") 36. Count III states that Small was held in Huntingdon "by virtue of a judgment and commitment of the United States District Court . . . and a U.S. Marshal's detainer lodged in conjunction with the judgment and conviction." App. 38. Small's contention is that Count I on its face concedes that he was never in federal custody, as it

8

indicates that the state prison released him "rather than" relinquishing him to the custody of the Attorney General.

Small's argument fails. While it is correct that the first count of the indictment indicates that there was a failure to relinquish Small to the custody of the Attorney General, it is plausible from the context that this portion of the indictment refers to physical custody, which, as explained above, is only one possible basis for custody under the statute. Count I makes no claim, one way or the other, about the constructive basis of Small's custody pursuant to the federal court's judgment of conviction. And though the statute includes "escape from the custody of the Attorney General or his authorized representative," the true basis of the charge against Small was an escape "from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate." 18 U.S.C. §751(a). Count III makes this clear by specifically mentioning that Small was subject to a "judgment and commitment of the United States District Court." App. 38. Absent Small's artifice, the state prison would have continued to hold him, pursuant to the District Court's order, until he was transferred to the physical custody of federal agents. Thus, while the wording of Count I may not have been ideal, it does not foreclose Small's conviction for escape under Count III of the indictment.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction.

9