NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1601
_____

UNITED STATES OF AMERICA

v.

ADAM NEFTALI SANTANA,
                            Appellant


_____


On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 1-19-cr-00251-001)
District Judge:  Honorable Jennifer P. Wilson
_____


Submitted Under Third Circuit L.A.R. 34.1(a)
June 29, 2023

Before:  JORDAN, KRAUSE and SMITH, *Circuit Judges*

(Filed: July 5, 2023)
_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

A jury convicted Adam Santana of three crimes associated with drug trafficking. He now appeals the denial of three pre-trial motions, as well as the sufficiency of the evidence supporting his convictions. Because the District Court committed no error in denying the motions and the evidence supports the convictions, we will affirm.

## I.  BACKGROUND

In February 2019, postal inspectors identified two suspicious parcels shipped from Puerto Rico and addressed to "Carmen Diaz" at a house in Chambersburg, Pennsylvania ("the Residence"), despite no one by that name being associated with the Residence. A drug detection canine alerted authorities to the presence of drugs in two of those parcels, one bearing a tracking number ending in 4884 ("Parcel 4884") and the other in 6795 ("Parcel 6795").[1] Authorities obtained and executed a warrant to search Parcel 4884 and found in it cosmetic bags with a distinct floral print. The bags in turn contained dryer sheets, children's toys with price tags from the store "All Ways 99," and two bricks of cocaine weighing a kilogram each. Several days later, officers also obtained a search warrant for Parcel 6795. That warrant and its supporting documents, however, incorrectly listed Parcel 4884 as the item to be searched. Pursuant to that warrant, they

_____

[1] Another parcel was shipped ten days before those two and was addressed to a "Madelinee Diaz." That name was also not associated with the Residence. Drug detection canines did not detect the presence of narcotics in that parcel. It was delivered, and Santana was observed picking it up and taking it inside.

2

found two bags, one of which was identical to the bags found in Parcel 4884, containing two bricks of cocaine weighing a kilogram each and items from the store "All Ways 99."

The investigating officers then decided to conduct a controlled delivery of Parcel 4884 to the Residence. Rather than deliver the actual drugs, they created a "sham, which is something that looks like and feels like [a cocaine brick and is] similar in size and weight." (App. at 303.) Officers also placed in the parcel a GPS tracker, which would notify them when the parcel was moved, and a light sensor, which would notify them when the parcel was opened. Looking to the future, they obtained an anticipatory warrant to search the Residence "contingent upon the delivery and acceptance of [Parcel 4884] and the parcel being taken inside of the [R]esidence[.]"[2] (App. at 38.)

Parcel 4884 was placed on the porch of the Residence, and two maintenance workers, who did not live at the home, picked up the parcel and brought it inside.[3] Santana then arrived at the Residence, entered the house, and the GPS tracker alerted officers that the parcel was moved. Several minutes later, the light sensor was triggered, indicating that Santana "ha[d] made entry into [Parcel 4884] and … found [the] kilogram[s] and exposed [the] kilogram[s] to light." (App. at 342.) Officers then

---

[2] The warrant expressly stated that "[i]n the event the delivery and acceptance of [Parcel 4884] does not occur, then and in that event, this search warrant will become null and void, will not be executed and will be returned to the issuing authority unserved." (App. at 38.)

[3] One of the maintenance workers later explained to the officers that due to "mail thieves" in the Chambersburg area, maintenance workers "routinely" bring packages inside to help secure their contents. (App. at 306.)

3

converged on the Residence to execute the search warrant, and, when Santana saw the officers, he attempted to throw away the sham cocaine. He was taken into custody. Officers recovered the sham kilos and "observed [one] to have been cut into, more than likely by a razor blade, to see what was inside[.]" (App. at 355.)

Officers searched the Residence pursuant to the anticipatory warrant. Inside the garage, they located Parcel 4884 with the address label "cut up into … multiple pieces" next to Santana's cell phone and a razor blade. (App. at 376.) They also found four cosmetic bags – one of which had the same floral print as the bag found in Parcel 4884 – containing dryer sheets and toys with price tags from the store "All Ways 99." (App. at 378-79; Supp. App. at 11-12, 15.) Inside the home, officers located a bottle of polyethylene glycol,[4] a digital scale and sealer, and a lawfully owned, loaded handgun kept in a dresser drawer in Santana's bedroom.

Santana was indicted by a grand jury for conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, and attempted possession with intent to distribute 500 grams or more of cocaine, all in violation of 21 U.S.C. §§ 841(a)(1) and 846; and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Santana pled not guilty and filed three pre-trial motions relevant to this appeal.

---

[4] The government claims that polyethylene glycol "is a laxative but is commonly used as a 'cutting' agent for cocaine to provide more bulk weight." (App. at 66.)

4

First, he filed a motion to suppress the evidence seized through the anticipatory search warrant, arguing that "the contingent conditions required to take place, i.e., delivery of [Parcel 4884], acceptance of the parcel, and the entry of the parcel into the property … did not take place." (App. at 28.) The District Court denied the motion, concluding that "[t]he package was adequately delivered when it was dropped off at Santana's address, even if it was not directly given to him" and that "by moving the package inside his home and opening it up – despite it being addressed to a different person – Santana … accepted the package." (App. at 84.)

Second, Santana filed a motion to suppress the evidence obtained during the search of Parcel 6795. Because the caption of the search warrant and its supporting documents incorrectly referenced Parcel 4884 instead of Parcel 6795, Santana argued that "the Search Warrant violated the Fourth Amendment of the U.S. Constitution by failing to describe with particularity the items to be searched and seized." (App. at 90.) He also contended that the officers "cannot claim good faith reliance" when the warrant and its supporting documents "all described a different parcel." (App. at 92.) The Court disagreed, characterizing "the mistakes" in the warrant as "mere technical errors." (App. at 148.) It concluded that the warrant "contained sufficient information for the executing officer … to identify the correct package and, having already executed the search warrant for [Parcel 4884], there was no reasonable likelihood that the wrong item would be searched." (App. at 148.) The Court also concluded that the good faith exception applied because the oversight was "akin to an act of simple, isolated negligence" rather than "the type of deliberate, reckless, or grossly negligent conduct that the exclusionary rule aims

5

to deter[.]"  (App. at 151 (quoting *United States v. Franz*, 772 F.3d 134, 144 (3d Cir. 2014)) (internal quotation marks omitted).)

Third, Santana moved to dismiss the indictment.  An officer had testified before the grand jury that "one postal inspector put[] on a uniform of a letter carrier" to deliver Parcel 4884, and that "[a]n individual later identified as Adam Santana took the box into the house."  (App. at 153.)  Santana argued that this testimony "was an intentional misrepresentation" that influenced the grand jury's decision to indict him, as the government did not use an agent dressed as a letter carrier to deliver Parcel 4884, and Santana did not receive the parcel from anyone; rather, it was placed on his porch and brought inside by maintenance workers.  (App. at 154.)  The District Court denied that motion, concluding there was no "grave doubt that the decision to indict" was tainted by those errors because "the grand jury was presented with 'considerable additional evidence supporting a decision to indict.'"  (App. at 211 (quoting *United States v. Lawrence*, 708 F. App'x 84, 87 (3d Cir. 2017).)

A jury convicted Santana of all charges, and he timely appealed the denial of his three motions.  In his appeal, he also contests the sufficiency of the evidence to establish the charge of conspiracy and possession of a firearm in furtherance of a drug trafficking crime.[5]

---

[5] Santana explicitly states that this "appeal does not challenge the sentence[,]" (Opening Br. at 3), yet the Notice of Appeal states that he "appeals the sentence" (App. at 1).  The Notice of Appeal also states that Santana "does not have the funds to pursue the appeal and needs counsel appointed."  (App. at 1.)  The government makes no argument that, because Santana cited the wrong order of judgment in his Notice of Appeal, we are without jurisdiction here.  "Notices of appeal, especially those filed pro se, are liberally

6

## II. DISCUSSION[6]

### A. The Motions to Suppress[7]

#### 1. *The Anticipatory Search Warrant*

The anticipatory search warrant was "contingent upon the delivery and acceptance of [Parcel 4884] and the parcel being taken inside of the [R]esidence[.]" (App. at 38.) Santana contends only that the conditions of the warrant were not met. He argues that, as Parcel 4884 "was addressed to Carmen Diaz and not to one of the adults that lived in the property, the contingency warrant required the parcel to be delivered to a person that lived on the property and for that person to accept the parcel." (Opening Br. at 12.) Under this interpretation, he claims the warrant requires "the hand delivery of the parcel to an occupant of the home," "that [the occupant] knowingly and voluntarily accepted the

_____

construed, and we can exercise jurisdiction over orders not specified in a notice of appeal if '(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.'" *Powell v. Symons*, 680 F.3d 301, 306 n.2 (3d Cir. 2012).

Those requirements are met here. Santana's intent is clearly to challenge his imprisonment, and the five issues he raises relate to his prison sentence. Additionally, the government fully briefed the merits of those issues. Accordingly, we will consider the merits of Santana's appeal, despite the appeal technically exceeding the issue raised in the Notice of Appeal.

[6] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[7] We review the District Court's "denial of a motion to suppress for clear error as to the underlying factual findings[,]" and we exercise "plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

parcel, knowing that it was addressed to Carmen Diaz[,]" and that the occupant also took the parcel inside. (Opening Br. at 12.)

Santana would have us read nonexistent language into the triggering events of the warrant. The warrant is silent regarding to whom Parcel 4884 must be delivered, who must accept the parcel, and who must bring the parcel inside. The warrant simply required that those triggering events occur, which they did. The District Court found that Parcel 4884 was delivered when it was placed at the Residence and brought inside by the maintenance workers. It concluded that Santana accepted the parcel by moving it, opening it, and rummaging through its contents, even though the parcel was not addressed to him. There is no clear error in those findings.

2.     *The Search Warrant for Parcel 6795*

Santana argues that the search warrant for Parcel 6795 lacks particularity because it "does not provide any guidance about the correct parcel to be searched." (Opening Br. at 17.) Not so. Consistent with the requirements of the Fourth Amendment, we have held that "it is enough if the description [in the warrant] is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place [or item] intended [to be searched.]" *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975). Even though the warrant and its supporting documents mistakenly referred to Parcel 4884 instead of Parcel 6795, the warrant sufficiently identified that Parcel 6795 was the intended parcel to be searched. Like Parcel 4884, it was sent to a "Carmen Diaz" at the Residence and contained the same return address and return recipient. The District Court's findings that the warrant "contained sufficient information for the executing

8

officer … to identify the correct package and, [the law enforcement agents] having already executed the search warrant for [Parcel 4884], there was no reasonable likelihood that the wrong item would be searched" are not clearly erroneous. (App. at 148.) In any event, the District Court was also correct in observing that, on this record, the good-faith exception to the warrant requirement applies.

## B. The Motion to Dismiss the Indictment[8]

"[A] district court is bound by the doctrine of 'harmless error' and may not dismiss an indictment on the basis of prosecutorial misconduct before the grand jury without making a factual finding that the defendant was prejudiced by that misconduct." *United States v. Soberon*, 929 F.2d 935, 939 (3d Cir. 1991) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)). For that misconduct to constitute prejudice, the district court must conclude that "the violation substantially influenced the grand jury's decision to indict," or it must harbor "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id*. at 939-40 (quoting *Bank of Nova Scotia*, 487 U.S. at 256).

Santana argues that the incorrect testimony given to the grand jury was "an intentional misstatement [that] significantly improve[d] the quality of the controlled delivery." (Opening Br. at 19.) We agree with Santana that the erroneous testimony

---

[8] We "apply a mixed standard of review to a district court's decision on a motion to dismiss an indictment, exercising plenary review over legal conclusions and clear error review over factual findings." *United States v. Small*, 793 F.3d 350, 352 (3d Cir. 2015) (internal quotation marks omitted).

"that the parcel was delivered to [the Residence], picked up by [Santana], and brought into the home by [Santana]," is problematic and may have been "more persuasive and incriminating than the real events." (Opening Br. at 19.) But, as the District Court found, there was ample other evidence to support the grand jury's decision to indict. For instance, the grand jury heard that the two parcels containing cocaine were addressed to the Residence, that Santana opened Parcel 4884, that he sliced into the brick of sham cocaine, and that bags were found at the Residence with the same distinct floral print found inside the parcels containing real cocaine. In light of those additional facts, the District Court's conclusion that "there is no grave doubt that the decision to indict was free from the substantial influence of the erroneous testimony" does not constitute clear error. (App. at 213.)

## C.    Sufficiency of the Evidence[9]

Santana's final arguments challenge the sufficiency of the evidence underlying his convictions for drug trafficking conspiracy and possession of a firearm in furtherance of a drug trafficking crime.

Regarding the conspiracy charge, Santana argues that the evidence is insufficient because he merely "had a buyer-seller relationship with the drug supplier." (Opening Br.

---

[9] Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Our standard of review in sufficiency of the evidence challenges is highly deferential." *United States v. Bailey*, 840 F.3d 99, 109 (3d Cir. 2016). We must resolve any conflicting inferences in favor of the prosecution. *Id.*

at 23.)  A buyer-seller relationship alone is insufficient to establish that the buyer was a member of the seller's conspiracy.  *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).  But "even an occasional supplier (and by implication an occasional buyer for redistribution) can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation."  *Id*. at 198.  Factors relevant "in making that evaluation are: the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust."  *Id.* at 199.

The jury heard evidence that supports the conspiracy charge.  For example, the jury was presented with evidence that Parcels 4884 and 6795 contained the same floral print bags filled with two bricks of cocaine weighing a kilogram each, dryer sheets, and children's toys with price tags from the store "All Ways 99."  Bags with a similar print were found in the Residence, along with a digital scale and a chemical agent commonly used to cut cocaine.  It also heard testimony that, upon entering the Residence, Santana immediately took steps to open Parcel 4884, cut into the sham brick of cocaine, and shred the address label.  That evidence is sufficient to support the jury's conclusion that the immediate events were consistent with a pattern of surreptitious activity and that Santana "was part of a larger operation" to sell cocaine imported from Puerto Rico.  *Id.* at 198.

Regarding the firearm charge, Santana argues that "the evidence only establishes the mere, coincidental presence of the firearm, not possession of a firearm in furtherance of a drug trafficking crime."  (Opening Br. at 29.)  We disagree.  Our precedent sets out

11

"nonexclusive factors" relevant to whether a firearm is possessed in furtherance of a drug trafficking crime, which include "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession[,] … whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). The jury heard evidence that Santana was the intended recipient of kilograms of cocaine sent in the mail from Puerto Rico to the Residence, where he lived, and that he kept a loaded handgun in the nightstand in his bedroom. Such a weapon kept in close proximity to drug activity can be readily used to protect an illegal drug supply. Although the weapon was lawfully owned, the evidence was sufficient to establish that the firearm was possessed in furtherance of Santana's drug trafficking crime.

## III.  CONCLUSION

For the foregoing reasons, we will affirm.